| | |
|---|---|
| **Federal Defenders** | Southern District |
| OF NEW YORK, INC. | 52 Duane Street, 10th Floor |
| | New York, NY 10007 |
| | Tel: (212) 417-8700 Fax: (212) 571-0392 |
| Tamara Giwa | Jennifer L. Brown |
| *Executive Director* | *Attorney-in-Charge* |

August 7, 2025

**BY ECF**

**MEMO ENDORSED**

Hon. Kenneth M. Karas
United States District Judge
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

    Re:    *United States v. Jahquan Crump*, 19 Cr. 785

Dear Judge Karas:

    I write to request early termination of Jahquan Crump's supervised release. Mr. Crump has completed over 16 months of his 36-month term of supervised release without a single violation, missed check-in, or positive drug test. During his nine months of home confinement, Mr. Crump reported to a halfway house every week for drug testing, programming, and to meet with his case manager. Now, on the Low Intensity Caseload, Mr. Crump checks in with Probation monthly, never missing a check-in. At Mr. Crump's sentencing, your Honor said, "[I]t's very unlikely we are going to see you again in the form of a supervised release violation or further crimes like that." Sentencing Tr. 12:21–23. Indeed, Your Honor was correct: throughout the sixteen months he has been on supervised release, Mr. Crump has not committed any new crimes or sustained a single probation violation.

    On supervised release, Mr. Crump has not only maintained full-time employment but has also started his own company. Beyond his professional success and unwavering compliance with probation, Mr. Crump has maintained close relationships with his family. He lives with his grandmother, two aunts, and cousin, all of whom he helps support. Indeed, his aunt remarked that "Jahquan has stepped up in our family in ways that speak volumes about his character." Mr. Crump has demonstrated that he is committed to living a law-abiding life, and there is no indication that further supervision is needed. In fact, his performance on Probation has been so strong that he was moved to Probation's Low Intensity Caseload, where he has minimal reporting requirements due to his overall compliance. Neither Probation nor the U.S. Attorney's Office opposes early termination of Mr. Crump's supervision. As such, the defense requests that the Court order early termination of Mr. Crump's supervised release.

1

I.      **Background**

On February 24, 2022, this Court sentenced Mr. Crump to 36 months' imprisonment to be followed by three years' supervised release, after he pleaded guilty to one count of bank fraud and one count of aggravated identity theft. Mr. Crump served his 36 months of imprisonment at Fort Dix, where he had—by any measure—a flawless prison record. During his three-year sentence, he did not receive a single infraction, ticket, or violation. He worked tirelessly cutting grass as a landscaper, and based on his strong work ethic, was ultimately promoted to Landscaping Clerk. As the Landscaping Clerk of Fort Dix, Mr. Crump was responsible for maintaining all of the landscaping equipment, submitting reports to request repairs or new material, and handling payroll for a team of landscapers. Even once he was promoted to Landscaping Clerk, he voluntarily maintained his work as a landscaper, cutting grass every day.

On February 16, 2024, Mr. Crump began his three-year term of supervised release. He is currently being supervised in the Southern District of New York on Probation's Low-Intensity Caseload, which requires him to report online to Probation once a month. Mr. Crump reports every month with fidelity; he has never been late or failed to report. Initially, Mr. Crump spent nine months on home confinement, reporting weekly to a halfway house for drug testing, programming, and meetings. Over the course of those nine months, Mr. Crump never failed a drug test or missed a meeting at the halfway house. When he was also assigned to report weekly to Workforce One on Fordham Row for job programming, he did so with fidelity: he never missed a meeting, and within two months, got a job doing homeless outreach with a nonprofit called BronxWorks, which works to help families improve their economic and social wellbeing.

Mr. Crump grew less satisfied with the job as he experienced physical violence and as eight-hour shifts turned into sixteen-hour shifts. Even still, he did not miss a day—or even an hour—of work. However, he did start trying to find another occupation. In January 2025, he started his own independent courier business called DeMarcoOlive Transit, which conducts same-day deliveries within New York City. As an employee of DeMacroOlive Transit, Mr. Crump drives a delivery truck throughout the Tristate area, ensuring that deliveries reach their destinations within a guaranteed timeframe. Mr. Crump is thriving in this job: he appreciates the flexibility to pick his own hours and is earning approximately $4000 per month, nearly half of which he puts toward his family. While driving for DeMacroOlive Transit, he has received two, low-level traffic violations: one for an improper turn, and one for use of electronic device while driving. Each time, he apprised Probation immediately.

Since returning from prison, Mr. Crump has also returned to his church. His aunt, Wondesha Gumbs, describes Mr. Crump's renewed interest in religion as "[o]ne of the most meaningful changes I've seen" in him. She reports that "his faith has clearly become a strong foundation for him. It has helped him find peace and direction and it's made a noticeable difference in the way he approaches life and responsibility." This sense of responsibility is clear in the care he provides or his grandmother, who now requires support with daily activities. Mr. Crump assists everyday by "preparing her meals, cleaning her house, assisting with errands, helping her get to appointments [and] simply being there for companionship and emotional support." Notably, as

Ms. Gumbs writes, "this wasn't something he was asked to do—he chose to, and he does it with patience and care."

## II.   Legal Standard

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Section 3583(e) gives the Court authority to terminate supervision at any time after the expiration of one year, if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e).[1] When determining whether to grant such an application, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)); *see also* United States District Court for the Southern District of New York Probation Office, *Early Termination from Supervision* (Aug. 2018) ("[Section] 3583(e)(1) does not require 'exceptional conduct' to justify early termination. Instead, a court must simply be satisfied that the termination is warranted and is in the interest of justice.").

What is missing from that list is § 3553(a)(2)(A): the Court need not consider the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  The Supreme Court made clear the importance of that omission:

> The SRA then provides additional guidance about how the considerations listed in § 3553(a)(2) pertain to each of the Act's main sentencing options—imprisonment, supervised release, probation, and fines. See § 3582(a); § 3583; § 3562(a); § 3572(a). These provisions make clear that a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration. For example, a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release.

*Tapia v. United States*, 564 U.S. 319 (2011) (emphasis in original).  A district court, when deciding whether to modify or revoke a term of supervised release, cannot consider "the need…to provide just punishment for an offense."  18 U.S.C. § 3553(a)(2)(A); *see* 18 U.S.C. § 3583(e).

This reference to the omission of retribution by the Supreme Court in *Tapia* duly aligns with the stance of the Sentencing Commission.  It has noted that post-sentencing rehabilitative

---

[1] As the Court is likely aware, the United States Sentencing Commission has adopted amendments to the Sentencing Guidelines related to supervised release.  Notably, it added a new policy statement at §5D1.4 (Modification, Early Termination, and Extension of Supervised Release (Policy Statement). This new policy statement encourages a court, as soon as practicable after a defendant's release from imprisonment, to conduct an individualized assessment to determine whether it is warranted to modify, reduce, or enlarge the conditions of supervised release. Additionally, any time after the expiration of one year of supervised release, it would encourage a court to terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and the interest of justice.

efforts "may provide a basis for early termination of supervised release under 18 U.S.C. § 3583(e)(1)." U.S.S.G. § 5K2.19.

Supervised release's rehabilitative purpose has been noted by many courts that have addressed the issue. The Supreme Court has indicated that, "[s]upervised release, in contrast to probation, is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). The Court further elaborated that supervised release is meant "to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 60 (2000). The Court then used this rationale to hold that prison time and supervised release are not "interchangeable." *Id.* at 60. This sharp distinction between supervised release and incarceration illustrates the rehabilitative, and not punitive, purpose of supervised release.

The Second Circuit has also clearly established the rehabilitative purpose of supervised release:

> Supervised release was established by the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., and was designed "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S. Rep. No. 98–225, at 124 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3307…Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.

*United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), as amended (July 22, 2015). District courts in this circuit have noted that "[t]he purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *United States v. Trotter*, 321 F. Supp. 3d 337, 339 (E.D.N.Y. 2018). *Trotter* makes clear that "[s]upervised release is designed to assist with rehabilitation, not to punish" and notes that courts are directed by Congress, in most cases, "to determine which defendants would benefit from the rehabilitative purposes of supervised release." *Id.* at 345. Those who no longer need the rehabilitative purposes of supervised release, then qualify for early termination.

Finally, the Supreme Court recently decided in *Esteras* that a district court may not consider the seriousness of a defendant's underlying criminal offense when deciding whether to grant early termination under § 3583(e)(1). *Esteras v. United States*, No. 23–7483 (U.S. June 20, 2025). The question presented in *Esteras* was whether the omission of § 3553(a)(2)(A) ("the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense") from the list of factors in § 3583(e)'s introductory sentence prohibits district courts from considering this factor when deciding whether to revoke supervised release. The Court answered in the affirmative: "District courts cannot consider § 3553(a)(2)(A) when revoking supervised release." Slip op. 8.

4

*Esteras* relied on § 3583(e)'s text, read in light of the *expression unius* canon, and concluded that the "natural implication" of Congress's decision to list some but not all of the § 3553(a) factors "is that Congress did not intend for courts to consider the other ... factors, [including] § 3553(a)(2)(A)." Slip op. 9. In addition, *Esteras* explained that "Congress's decision to exclude retribution from the calculus also comports with the role of supervised release," which is "not a punishment," but is meant to "fulfill[] rehabilitative ends" and "provide[] individuals with postconviction assistance." Slip op. 9–10. Thus, courts applying § 3583(e) "must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation) but may not consider the *backward-looking* purpose of retribution." Slip op. 10.

### III. The Interests of Justice and Mr. Crump's Conduct on Supervision Warrant Early Termination

Early termination is appropriate in Mr. Crump's case. As mentioned above, Mr. Crump's conduct on supervised release has been exemplary: he has not received a single violation since he began his term of supervised release in February of 2024. Glen Spence, a probation officer with the Low-Intensity Caseload, reported that Probation has not experienced any difficulties with Mr. Crump. Mr. Spence also confirmed that Mr. Crump has complied with all of the conditions of his supervised release. Probation, therefore, does not oppose Mr. Crump's request for early termination. Nor does the Government.

Mr. Crump's conduct on supervised release—his gainful employment, his financial support for his family, and most importantly, his dedicated care for his ailing grandmother—supports his request for early termination. Mr. Crump's behavior "demonstrates that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [Mr. Crump], and protecting the community from future harm by [him]." *United States v. Noel*, 2021 WL 4033769, at *2 (E.D.N.Y. Sept. 3, 2021). The resources of the Probation Department, which have been particularly taxed as of late, would be better spent on an individual who needs supervision and can benefit from the services offered by a probation officer—not on Mr. Crump.

Mr. Crump has demonstrated that he can comply with the demands of supervision—which at this point entail only a monthly, online check-in—and owes no restitution in this case. As such, continued supervision has no purpose for Mr. Crump. Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve. *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Sam*, 16 Cr. 184 (JGK) (S.D.N.Y. 2018) (same); *United States v. Cummings*, 06 Cr. 481 (JGK) (S.D.N.Y. 2017) (same);

*United States v. Bethea*, 05 Cr. 1234 (DC) (S.D.N.Y. 2015) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early).

In granting early termination motions, courts in other districts have similarly recognized the psychological toll of supervision, acknowledging the "significance to defendants of 'being off the papers' and becoming one's own person without reporting requirements and without having to request permission to engage in travel or other activities. Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom…" *United States v. Roman et al.*, No. 3:06-cr-268-26 (JBA), Order Granting Defendant's Motion for Early Termination of Supervised Release (D. Conn. Jan. 4, 2023) at 2. Additionally, as Judge Dearie in the Eastern District noted, early termination of supervision is important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized" as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb. 12, 2021).

Early termination of Mr. Crump's supervision would reward his hard work, his respect for his supervision to date, and the progress he has made. Importantly, it would also send a message to other defendants on supervision – that early termination of supervision is possible with hard work and full compliance.

## IV.  Conclusion

Mr. Crump's flawless performance on supervision, his stable employment, and his strong familial support all suggest that he has successfully reintegrated into the community and no longer benefits from supervision. Your Honor ended Mr. Crump's sentencing by saying, "I am confident I won't see you here" again, and that turned out to be the case. Mr. Crump has followed every rule Probation has put in place for him. Given the progress Mr. Crump has made since being released from prison, early termination of his supervised release is warranted and in the interest of justice.

Thank you for your time and attention to this matter.

Respectfully Submitted,

Marisa K. Cabrera, Esq.
Assistant Federal Defender
Tel.: (212) 417-8730

Application for early termination of supervised release, pursuant to 18 U.S.C. Section 3583(e), is granted. After considering all the appropriate factors, which are thoroughly discussed in this letter, the Court finds that it is appropriate to grant Mr. Crump his early release. His record, both in prison and while on supervised release is perfect and he has shown all signs of a healthy rebound from his criminal conduct. Good luck to Mr. Crump.

So Ordered
8/12/25